IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| Huadan Zheng a/k/a Carrie Zheng, | ) | C/A No.: 1:25-cv-10893 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Todd M. Lyons, Acting Director, U.S. | ) | |
| Immigration and Customs Enforcement, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Last week, Defendant U.S. Immigration and Customs Enforcement ("ICE") sought to make good on the current administration's campaign promise to be tough on "criminal aliens" through any means possible. This time it targeted international students at United States universities that it claims were "identified in criminal records checks." Rather than complying with its own regulations, ICE simply terminated these students' records in SEVIS—an online database housing information about each international student—thereby terminating their immigration status as a lawful student. ICE interprets this action to deprive these students of status and instructs them to leave the U.S. immediately:

| Termination Reason | Duration of Status |
|---|---|
| **Termination for any violation of status** | • **No grace period.**<br>• If the student and dependents are still in the United States, the student must either apply for reinstatement, or the student and dependents must leave the United States immediately. |

*See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited Apr. 7, 2025). ICE's political act, however, terminated status for *students with no criminal record* like Plaintiff Huadan Zheng.

For the reasons below, this Court must set aside ICE's termination of Plaintiff's SEVIS record and F-1 status to prevent irreparable harm.

## PARTIES

1. Plaintiff Huadan Zheng a/k/a Carrie Zheng is a citizen and national of the People's Republic of China who currently resides in Brighton, Suffolk County, Massachusetts.

2. Defendant is Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement. In his official capacity, Defendant is in charge of the Student and Exchange Visitor Program ("SEVP") which terminated Plaintiff's record in the Student and Exchange Visitor Information System ("SEVIS") and his F-1 student status. Defendant resides in Washington, DC.

## VENUE AND JURISDICTION

3. This Court has jurisdiction over this case under 28 U.S.C. § 1331.

4. Under § 1331, this Court can hear challenges to final agency actions under 5 U.S.C. § 706(2). Termination of a SEVIS record and F-1 status is a final agency action, ripe for challenge. *See Fang v. Dir. U.S. Immigration and Customs Enforcement*, 935 F.3d 172 (3rd Cir. 2019).

5. Under § 1331, this Court can provide declaratory relief under 28 U.S.C. § 2201.

6. Venue is proper in this District and Division because Plaintiff lives in this district and division. 28 U.S.C. § 1391(e)(1)(C).

7. No statute or regulation requires any administrative exhaustion before filing suit.

## FACTS

8. Plaintiff Huadan Zheng a/k/a Carrie Zheng is a citizen and national of the People's Republic of China.

9. Carrie attended middle school and high school in Boston.

10. She applied to and was accepted into Boston University's bachelor's program in business administration in 2021.

11. In October, Carrie attended a visa interview at the U.S. Consulate in Hong Kong, and the U.S. Department of State provided her a student visa under 8 U.S.C. § 1101(a)(15)(F)(i).

12. On December 22, 2021, Carrie traveled to the United States, sought admission at a lawful port of entry, and acquired admission in F-1 status.

13. Unlike most nonimmigrants, the border agent did not admit Carrie for a certain period of time. Rather, the border agent admitted Carrie for a "duration of status." *See* 8 C.F.R. § 214.2(f)(5)(i).

14. Regulations define a duration of status for an F-1 student as follows:

> **(i) General.** Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies, except that an F-1 student who is admitted to attend a public high school is restricted to an aggregate of 12 months of study at any public high school(s). An F-1 student may be admitted for a period up to 30 days before the indicated report date or program start date listed on the Form I-20 or successor form. The student is considered to be maintaining status if the student is making normal progress toward completing a course of study.

*Id.*

15. Because degree programs differ in length from program to program and school to school, F-1 students are generally admitted for the duration of their student status like Carrie.

16. To monitor and verify that an F-1 student does not overstay their status, U.S. Immigration and Customs Enforcement operate the Student Exchange and Visitor Program or SEVP. 8 U.S.C. § 1372. SEVP in turn certifies schools to accept F-1 students. 8 C.F.R. § 214.3(c). To qualify for SEVP-certification, schools must agree to report, update, and maintain information about each F-

1 student in SEVP's Student and Exchange Visitor Information System or SEVIS. *Id.* at § 214.3(g).

17. SEVIS is nothing more than an online database housing data about all F-1 students that SEVP-certified schools are required to use for international students. 8 U.S.C. § 1372.

18. Schools are required to report certain events in SEVIS, such as the student's start date, course progress, and graduation. 8 C.F.R. § 214.3(g).

19. In turn SEVP monitors SEVIS to verify that F-1 students are "maintaining their status" throughout their "duration of status."

20. Regulation defines "maintaining status" for F-1 students as "making normal progress toward completing a course of study." 8 C.F.R. § 214.2(f)(5)(i).

21. So, if a student quits school, the school—through its "designated school officer" or DSO—reports the early withdrawal in SEVIS and terminates the student's SEVIS record and with it the student's F-1 status.

22. Depending on the reason for termination, ICE considers a student with a terminated SEVIS record as a nonimmigrant without status present in the United States and expects those nonimmigrants to leave the United States, though certain bases for termination do engender grace periods.

23. An F-1 student's SEVIS record and F-1 status can be terminated for a limited number of reasons. Without a SEVIS record, a student cannot have F-1 status. The two are inextricably intertwined.

24. First, a DSO can terminate a SEVIS record and F-1 status if the student does something wholly inconsistent with making normal progress toward completing a course of study, such as withdrawing early, never showing up at school, or graduating. *See generally*

https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last visited Apr. 7, 2025).

25. Second, a DSO can terminate a SEVIS record and F-1 status if the student commits certain actions that the regulations define as a failure to maintain status:

- "Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status";
- "A nonimmigrant's willful failure to provide full and truthful information requested by DHS (regardless of whether or not the information requested was material) constitutes a failure to maintain status"; and
- "A nonimmigrant's conviction in a jurisdiction in the United states for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]"

8 C.F.R. §§ 214.1(e)-(g).

26. Third, SEVP and ICE can take certain steps to terminate the F-1 student's SEVIS and F-1 status as follows:

> **Termination of status.** Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

8 C.F.R. § 214.1(d).

27. Finally, if ICE believes an F-1 student has failed to maintain their student status, it can place the student in removal proceedings where it bears the burden to prove by clear and convincing evidence the student is removable for failure to maintain status. 8 U.S.C. § 1227(a)(1)(C). If ICE carries its burden, an immigration judge can order an F-1 student removed, thereby terminating their SEVIS record and F-1 status.

28. Carrie has never violated her F-1 status and she has consistently maintained her student status by making normal progress toward completing a course of study.

29. Again, she is expected to acquire her bachelor's in May of 2026, which is the normal span for a bachelor's degree at Boston University.

30. However, On November 24, 2024, I was taken into custody after a traffic stop for speeding and charged with five traffic offenses. However, the following day the Brookline District Court dismissed the first charge and deemed me not responsible for the remaining four counts. As such, my attorney explained to me that I have no entries on my Massachusetts Board of Probation Record, and I have no criminal record.

31. While traumatizing, this one-night in custody did not cause Carrie to fail to maintain status because she continued to attend class and make normal progress toward completing her course of study, her actions did not trigger any of the regulatory reasons for finding she failed to maintain her status, ICE took no steps under § 214.1(d) to terminate her SEVIS record or F-1 status, and ICE did not initiate removal proceedings against her.

32. Carrie had no cause for concern about her immigration status.

33. This changed on April 4, 2025, when Boston University notified Carrie that ICE had terminated her SEVIS record and F-1 status through a notation in SEVIS that states:

> TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

34. ICE's website explains that there is no grace period for termination for "otherwise failing to maintain status" and Carrie would have to leave immediately:

| Termination Reason | Duration of Status |
|---|---|
| **Termination for any violation of status** | • **No grace period.**<br>• If the student and dependents are still in the United States, the student must either apply for reinstatement, or the student and dependents must leave the United States immediately. |

*See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited Apr. 11, 2025).

35.     Contemporaneous, on April 4, 2025, the U.S. Department of State revoked her F-1 visa.

36.     Revocation of a visa alone, however, would not impact Carrie's SEVIS record and F-1 status in the United States because a visa revocation impacts only the actual visa document.

37.     Visa revocation precludes Carrie from using her actual visa again to seek admission to the United States, but it does not alone impact her current SEVIS record or F-1status.

38.     ICE's termination of Carrie's SEVIS record and F-1 Status causes her irreparable harm.

39.     First, according to ICE, Carrie no longer has F-1 status in the United States and she must leave immediately or risk detention and physical removal. Because she lost her status, she cannot extend her current status or change status to a new nonimmigrant visa. *See Liu v. Noem*, No. 1:25-cv-133-SE-TSM, slip op. 3-5 (D.N.H. April 10, 2025).

40.     Second, according to USCIS, Carrie is now accruing unlawful presence, which will prevent her from acquiring a new visa in the future and can lead to a bar on her reentry.

41.     Third, Carrie cannot complete her degree at Boston University, despite having only one more year. This will lead to a loss of hundreds of thousands of dollars in tuition with nothing to show for it.

42.     Fourth, ICE's claim that Carrie has a criminal record stigmatizes her for any future employment in the United States or visa application. ICE claims that Carrie has a criminal record which reflects on her moral character and leaves her with the stigma associated with a criminal record. And Carrie has no mechanism to set aside this stigma.

43. Finally, this is causing Carrie significant mental anguish and suffering. Her education is uncertain. Her life in the United States is uncertain. And her immigration status is uncertain. This uncertainty is causing sleepless nights and stressful days.

44. ICE/SEVP's termination of Carrie's SEVIS record and F-1 status is unlawful.

## FIRST CAUSE OF ACTION
### (APA – Unlawful Decision)

45. ICE's termination of Carrie's SEVIS record and F-1 status is unlawful, arbitrary and capricious, and in violation of law. 5 U.S.C. § 706(2).

46. It is indeed a final agency action that harms Carrie for which there is no other adequate remedy in a court. 5 U.S.C. §§ 702, 704.

47. A final agency action is arbitrary and capricious where:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

48. ICE's termination decision is arbitrary and capricious because:

   a. It is *ultra vires* because ICE does not have authority to terminate SEVIS records and F-1 status without going through the mechanisms in 8 C.F.R. § 214.1(d);

   b. It lacks reasoned decisionmaking because ICE fails to set forth the reasons for its decision or provide any reasoning;

   c. It is arbitrary and capricious because Carrie has no criminal record and, therefore, the decision failed to consider an important aspect of the problem;

   d. It is arbitrary and capricious because Carrie has no criminal record and, therefore, the decision runs counter to any evidence;

e. It is arbitrary and capricious because it interprets failure to maintain status unlawfully to include all interactions with the police;

f. It is arbitrary and capricious because Carrie did not fail to maintain her status as student because he has bene and continues to be "making normal progress toward completing a course of study," 8 C.F.R. § 214.2(f)(5)(i);

g. It violates 5 U.S.C. § 558(c) because F-1 status is a license—permission to attend a SEVP-certified school—and a license cannot be taken without notice and opportunity to remedy any defect, *see N. Rockies Reg'l Ctr., LLC v. Jaddou*, 743 F. Supp. 3d 1195, 1205-06 (D. Mont. 2024);

h. It violates the Due Process Clause of the Fifth Amendment because Plaintiff has a cognizable property or liberty interest in her SEVIS record and F-1 status and ICE provided no notice or opportunity to respond before it terminated Plaintiff's SEVIS record and F-1 status;

i. Without a director appointed by the president and confirmed by the senate, ICE cannot terminate SEVIS or F-1 status without violating the Appointment's Clause of the United States Constitution; and

j. ICE's termination of Plaintiff's SEVIS record and F-1 status is arbitrary and capricious for various other reasons that Plaintiff cannot identify until ICE turns over a certified administrative record. Thus, Plaintiff reserves the right to expand the bases for its claims that such decision is arbitrary and capricious until dispositive motions based on an administrative record.

49.     For all of these reasons and those additional grounds that Plaintiff can identify after a review of the certified administrative record, ICE's termination of Plaintiff's SEVIS record and F-1 status must be set aside.

## CLAIM FOR EQUAL ACCESS TO JUSTICE ACT FEES

50.     ICE's termination is substantially unjustified under the APA.

51.     Plaintiff qualifies for fees under the Equal Access to Justice Act.

52.     Plaintiff is entitled to reasonable attorney's fees under the Equal Access to Justice Act.

## PRAYER FOR RELIEF

Plaintiffs pray that this Court will:

53.     Take jurisdiction over this case;

54.     Enter a temporary restraining order or preliminary injunction, enjoining the effect of ICE's termination of Plaintiff's SEVIS record and F-1 status during the course of this litigation;

55.     Declare ICE's termination decision unlawful;

56.     Enter an order setting aside ICE's termination decision and enjoining ICE from terminating Plaintiff's SEVIS record and F-1 status without additional process in the future;

57.     Order ICE to pay reasonable attorney's fees; and

58.     Enter and issue other relief that this Court deems just and proper.

April 11, 2025                                  Respectfully submitted,

                                                s/Bernard P. Wolfsdorf
                                                BERNARD P. WOLFSDORF
                                                Wolfsdorf Rosenthal LLP
                                                1416 2nd Street
                                                Santa Monica, CA 90401
                                                Tel: (310) 570-4088
                                                bernard@wolfsdorf.com

                                                s/Brad Banias
                                                BRAD BANIAS

Banias Law, LLC
602 Rutledge Avenue
Charleston, SC 29403
843.352.4272
brad@baniaslaw.com

*pro hac vice forthcoming*

Attorneys for Plaintiff